CHARLES WRIGHT et al., Appellants, v. CITY OF JOPLIN et al.

Division One, July 5, 1918.

1. **STREET AND LOTS:** Plats and Measurements: Conflict. By Section 6573, Revised Statutes 1879, the platting of ground had the same legal effect to dedicate to public use the streets and alleys therein described as would a conveyance directly to the city; and when the owners of the lots and blocks fronting on said streets and alleys as shown by the plat sell them to third parties, the title to the streets and alleys cannot be questioned by the city or by the purchasers of other lots, nor can the rights of the purchasers of lots to access to the streets and alleys as shown by the plat be questioned by purchasers of other lots embraced within the plat. [Following Laddonia v. Day, 265 Mo. 383.]

2. ——: ——: ——: Plat Determinative. When the plat of an addition has been executed and filed in conformity with the statute, the streets and alleys indicated by the plat as actually fitted to and laid out on the land, and not as indicated by calls of measurements, courses and distances as shown by field notes of the surveyor, became vested absolutely in the city for the use of the public. If there is a conflict between said plat and the measurements of a survey—if the plat designated certain streets and they were actually laid off on the surface of the ground by the dedicators as indicated by it and as subsequently used by the public, and lots were sold and improved in conformity to stakes and boundary lines, which also were in conformity to the plat, although the field notes attached to and filed with the plat described the tract as 1320 feet square, when as shown by the plat the tract was 1325 feet east and west, and as shown by a subsequent survey was 1300 feet on the north line thereof and 1299.7 feet on the south line—the plat must prevail, and the city cannot change the lot lines as shown by it, nor re-establish the streets and alleys in accordance with the actual measurements.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

REVERSED AND REMANDED.

*Hugh Dabbs* and *W. J. Owen* for appellants.

(1)   Where the land, as in this instance, was actually surveyed and stakes set out to indicate the various lots, streets, and alleys by the proprietors, and were fenced and improved, and the streets and alleys opened and used in accordance with these stakes, and the conduct of the first settlers shown a uniform understanding, such lines so shown to exist cannot be changed by subsequent surveys. McKinney v. Doane, 155 Mo. 288; Jones v. Poundstone, 102 Mo. 240; Waysville v. Truex, 235 Mo. 628; Whitwell v. Spiker, 238 Mo. 638; Thrush v. Graybill, 81 N. W. 798; Root v. Town, 54 N. W. 206; Stetson v. Adams, 39 Atl. 375; Bean v. Bachelder, 3 Atl. 279; Ripley v. Berry, 17 Am. Dec. 201; Halst v. Streitz, 20 N. W. 307; Richardson v. Chickering, 77 Am. Dec. 269; Kellog v. Mullen, 45 Mo. 571.   (2) Tradition, reputation, hearsay, visible monuments, both natural and artificial, conduct of first settlers, uniform constructions and im-

provements, testimony of any one having knowledge of the facts may be employed to prove and establish the true lines as staked out and marked by the original proprietors upon the ground. St. Louis Pub. School v. Risley Heirs, 40 Mo. 371; Marysville v. Truex, 235 Mo. 628; Whitwell v. Spiker, 238 Mo. 638; Kronenberger v. Hoffner, 44 Mo. 192; Whitehead v. Regan, 106 Mo. 235; Jacobs v. Mosley, 91 Mo. 460; Major v. Watson, 73 Mo. 662; Mayor of Liberty v. Burns, 114 Mo. 430. (3) The particulars of the description contained in a plat are not conclusive of the correctness of such description, and is only a picture of the survey from which it was made, and is only intended to be a representation of the actual survey as made upon the ground. Coleman v. Lord, 52 Atl. 645; Whitwell v. Spiker, 238 Mo. 638. (4) The city improved some of these streets, laid water mains therein, put in culverts, and street cars operated thereon, and all conforming to lines as marked and staked out by original proprietors, and all of these facts evidenced dedication and acceptance. Rose v. St. Charles, 49 Mo. 510; Naylor v. Harrisonville, 207 Mo. 349; Benton v. St. Louis, 217 Mo. 703.

*E. F. Cameron* for respondent.

(1) When an authenticated plat of a sub-divided tract of land is referred to in a deed conveying a subdivision of such tract, the plat becomes as much a part of the deed as if fully incorporated in it. Whitehead v. Ragan, 106 Mo. 231. (2) Equity will interfere to ascertain and fix boundaries where the rights of a large number of persons are, as in the present case affected, and the confusion of boundaries has been occasioned by lapse of time, accident or mistake, and a necessity arises therefrom to adjust such conflicting claims, and thus prevent multiplicity of litigation. Frame v. Roboteau, 56 Mo. 415; 1 Story's Equity Jurisprudence, sec. 621. (3) The lines that appellants contend for have long since become obscured, if not entirely obliterated. The monuments are gone. In such a case equity has

jurisdiction to settle them. Watkins v. Child, 11 Am. & Eng. Ann. Cases, 1123. (4) When a plat is filed to an addition in a city or village that is not incorporated, the fee of such land conveyed as aforesaid shall be vested in the proper county in trust for the uses and purposes mentioned in said plat. Sec. 10294, R. S. 1909. There need not be an acceptance by the county or by the city to vest this title. Hill v. Hopson, 150 Mo. App. 611; Brown v. Carthage, 128 Mo. 17.

WOODSON, J.—The plaintiffs instituted this suit in the circuit court of Jasper County against the defendants, for the purpose of having the streets and alleys in First Addition to East Joplin City, now incorporated in and constituting a part of the City of Joplin, Jasper County, Missouri, as laid off on the surface of the ground by the original owners of the land on which the addition is located, ascertained, determined and established. The full prayer is "that the said streets and alleys as laid off on the surface of the ground by the original owners be ascertained, determined and established, and the acts of said original owners be confirmed and adjudged; that all lots and tracts of land owned by plaintiffs and others likewise situated in said addition be ascertained, determined, established and adjudged as the same was laid and staked off by the original owners on the surface of said ground; that said defendant, City of Joplin, be perpetually enjoined and restrained from changing the lot lines as originally established by the original owners, of the streets and alleys, as laid off and established by the original owners, or from exercising any dominion over any part of the lots and tracts of ground owned by these plaintiffs, inconsistent with lines and boundaries as laid off and staked on the surface of said ground by the original owners; and that said defendant city be perpetually enjoined and restrained from passing any ordinances authorizing any improvements otherwise than in conformity with the lines made by said original owners; that said defendant V. E. Koch, a contractor,

be perpetually enjoined and restrained from putting in any street crossing, constructing any sidewalk or making any other improvements that will change or interfere with any of the boundary lines, marks or monuments established by the original owners of said ground as aforesaid; that both of said defendants be perpetually enjoined and restrained from doing any act of trespass upon the realty of these plaintiffs, or prevent them in any manner from occupying and enjoying the tracts and lots of land claimed by them to be the boundary lines as laid and staked off by said original owners, subject to the city's rights as a municipal corporation, and plaintiffs pray for all such other, further and general orders, judgments and decrees touching the premises, as to the court shall seem meet, just and proper, and for costs of suit.''

The material parts of the answer are as follows:

That on the 30th day of May, 1872, the owners of the southeast quarter of the northeast quarter of section two, township twenty-seven, range thirty-three, Jasper County, Missouri, being the same owners as those said owners who platted the said addition entitled "East Joplin City," as aforesaid, made and executed a plat of and dedicated a town addition located on said last mentioned land, and entitled the same, "First Addition to East Joplin City," a copy of which marked "Exhibit C" and "Exhibit D" is attached hereto and the same, together with the notations and averments thereon, are made a part hereof and of the averments of this answer, the said plat being duly filed for record in the office of the Recorder in said Jasper County, Missouri, on the 3rd day of June, 1872; and that said plat, with the dedication of the streets and alleys to the public use as therein provided, at all times since, has been accepted, recognized and treated as an addition to the city of Joplin, by this defendant and the municipal corporation of which it is the successor.

But said defendant further says that by reason of mistake and accident in computing and drafting said plat of East Joplin City, the same is inconsistent and re-

pugnant, for that the call for the external lines of said addition are 1320 feet north and south, and 1320 feet east and west, but calls for the lots and subdivisions thereof aggregate 1325 feet east and west, while the dimensions of the designated forty-acre tract whereon the plat is located are only about 1300 feet east and west, and about 1218 feet north and south. That by reason thereof the lines and limits of the said addition and the lots, streets, alleys, and subdivisions thereof, and by reason of the lapse of time, carelessness of the occupants, mistaken and conflicting surveys, and absence of any fixed monuments, have become confused and uncertain, and likewise the lines and limits of the said First Addition to East Joplin City, and because the same is on the contiguous subdivision of the same quarter section as East Joplin City, and conflicts with and overlaps the plat of said East Joplin City, and because of the lapse of time, carelessness of the occupants, mistaken and conflicting surveys, and absence of any fixed monuments, have also become confused and uncertain. That by reason thereof the external lines of both said additions, and of the lots, streets, alleys and subdivisions have been and are now obliterated, so that no one of the plaintiffs is occupying according to the original boundaries of his premises, and by reason of such conditions and the said state of affairs the lines of the streets and alleys of the said defendant, City of Joplin, in both said additions, are confused, irregular, uncertain and their true limits obliterated, nor is this defendant able with reasonable accuracy, to locate, by any personal knowledge of its officers, agents or servants, or by public records as exist, the physical location, metes, and bounds of the streets and alleys of said addition, dedicated to the public use and intended to be under said defendant's supervision and control.

And said defendant says, following upon the uncertainty, mistakes, confusion in respect of said lines as aforesaid, the plaintiffs herein and numerous of the other occupants of said additions have been and are encroaching upon the streets and alleys thereof,

and proposing and threatening to resist every effort of said defendant to exercise authority over such streets and alleys, and threatening to enjoin said city and its officers and to prevent any work of improvement in said streets or alleys or parts thereof.  That the said defendant is embarrassed and impeded in making necessary and proper improvements upon its streets and alleys, and in attempting to perform such duties in the premises would inevitably and necessarily become involved in controversies and litigation with a great number of the owners of the lots and parcels of said addition, and delayed by long, continued, vexatious and unreasonable litigation, cost, and expenses, as well to the property owners in said additions as to this defendant.

And defendant says that all of the parties plaintiffs, and all the numerous owners, residents, and occupants of all and every the various lots and tracts and parcels in said additions, more numerous than is practicable to bring them all before this court, are equally interested in having the boundaries and lines of said additions and of the streets and alleys thereof determined in one action, and that the same is necessary in the premises, in order to avoid a multiplicity of suits at law, and which would necessarily have to be resorted to if the relief prayed for in this answer be denied.

Wherefore, said defendant, City of Joplin, prays that the court correct and amend the said East Joplin City plat, and harmonize and adjust the lines thereof in accordance with the intentions of the grantors thereof; and that the court fix and determine the external boundaries of both said additions, and the lines and boundaries of the streets and alleys thereof, as against the said plaintiffs, and by representation against all parties having a common interest in the subject of this action, and for any other and further relief as to the court may seem just and proper in the premises.

The reply was a general denial.

After hearing the evidence, which is very voluminous, the court found the issues for the defendants and rendered judgment as prayed for in the answer.

After moving unsuccessfully for a new trial, the plaintiffs duly appealed the cause to this court.

In so far as the survey of this addition is concerned, the dedication of the streets and alleys to the public and the staking off of the lots and blocks according to their frontage upon said streets and alleys by the owners of the land platted in the year 1872, the evidence is practically undisputed.

The facts are tersely outlined by counsel for plaintiffs in their statement of the case, as will more fully appear presently from excerpts made from the finding of the court, which are preserved in the record.

The statement of counsel for the plaintiff is as follows:

"During the year 1872, and long prior thereto, John H. Taylor, S. B. Corn and others were the owners in fee of the southwest quarter of the northeast quarter of section 2, township 27, range 33, in this county, and they also owned the land surrounding, adjoining and adjacent thereto. They laid off this tract in streets, alleys and lots, as an addition to East Joplin City, now a part of the City of Joplin, and these plaintiffs, together with many other persons, became and are the owners of certain lots so laid off and sold by said owners.

"The lots so purchased and sold were improved by the purchaser, in conformity with certain stakes and boundary lines set and established by the owner. Said improvements were uniform and conformed to the streets and alleys, as then established and located on the surface of the earth.

"These plaintiffs, and other persons likewise situated, have since that date maintained their improvements in conformity with these lines, and still claim to the lines as originally laid off.

"Some time thereafter the city of Joplin made another survey of this land, which, if conformed to, would move all of the original owners, so that the streets, under the new arrangement, would cut twenty-five feet into the lots of the original owners and leave

twenty-five feet of the old streets, as a part of their holdings, and this suit was instituted in July, 1912, in an effort to set at rest as to whether the old, original owners should yield to the changed conditions as brought about by the city.

"The city of Joplin answered, admitting the ownership of the original holders and asserting the disputes as to the true lines, and joins with the plaintiffs in the request to have the boundaries and lines of said addition, and all of the streets and alleys thereof, determined."

The findings of the court insofar as they are material to the legal proposition presented for adjudication are as follows:

"The court now being fully advised in the premises doth find that the defendant, City of Joplin, is a city of the third class under the laws of the State of Missouri, and is the successor of East Joplin City, a municipal corporation of the State of Missouri, and of all additions heretofore made thereto, and of all the rights, privileges and jurisdiction thereof as limited by its authority and charter as such city of the third class, and that the southwest quarter of the northeast quarter of section 2, township 27, range 33, is within the corporate limits of said city of Joplin. That on the 18th day of March, 1872, the owner of said southwest quarter of the northeast quarter of section 2, township 27, range 33, made and executed a plat of said last described land, laying the same off into blocks, lots, streets, and alleys, and entitled the same 'East Joplin City,' and dedicated the streets and alleys to public use, which said plat, together with the field notes thereto attached, was filed for record in the Recorder's office of Jasper County, Missouri, on the 20th day of March, 1872. That said field notes described said tract of land so platted and laid out as being 1320 feet east and west and 1320 feet north and south; that said plat shows the aggregate width of said tract of land east and west to be 1325 feet, and the court finds from the evidence that the actual width of said tract of land east

and west is 1300 feet on the north line thereof and 1299.7 feet on the south line thereof. That the measurements, call and distances in the field notes begin on the west line of said tract and extend eastward across the same, so that the actual size of said tract of land is 20 feet less at the north end and 20.3 feet less at the south end, than was platted, as shown by the field notes, and that the actual size of said tract of land east and west is 25 feet less at the north end and 25.3 feet less at the south end than was platted, as shown by said plat. Said plat shows a street 25 feet wide on the east thereof designated as Fifth Street, now named Hight Street, so that at the north line of said tract the west line of Fifth Street as shown by the plat is identical with the east line of said tract of land, and is .3 of a foot west of the east line of said tract of land at the south end thereof, and according to the field notes 20 feet of Fifth Street is east of the east line of said tract of land at the north end and 20.3 feet east of the east line of said tract of land at the south end thereof, therefore, according to said plat, the whole of Fifth Street was east of and entirely off of the said plat so platted, and according to the field notes 20 feet of Fifth Street was east of and off of said tract so platted, with a variation of .3 of a foot at the south end as above stated.

"That on the 30th day of May, 1872, the said owners of said land so platted and laid out as aforesaid, being also owners of the land immediately east thereof, to-wit, the southeast quarter of the northeast quarter of said section 2, township 27, range 33, made and executed a plat of said last described land, laying the same off in blocks, lots, streets and alleys, and entitled the same 'First Addition to East Joplin City,' and dedicated the streets and alleys to public use, which said plat, together with the field notes thereon and thereto attached, was filed for record in the Recorder's Office of Jasper County, Missouri, on the 3rd day of June, 1872. That said field notes and also said plat described said tract of land so platted and laid off as being 1265.5

feet east and west, and the court finds from the evidence that the actual width of said tract of land east and west is 1301.01 feet on the north line thereof, and 1299.7 feet on the south line thereof. That the measurements, call and distances in the field notes begin at the west line of said tract and extend eastward across the same, instead of beginning at the east line of Fifth Street as laid off and platted by the plat of the First Addition to East Joplin City. A strip on the west side thereof 30 feet wide is designated as Fifth Street. The court finds that the owners of said two tracts of land so platted and laid off as aforesaid made surveys thereof and staked off the lots, streets and alleys by planting wooden pegs in the ground, so as to show the lines of the streets and alleys and the corner of the lots, but the exact dates thereof are not shown, but in the summer of 1872 lots were being sold and improvements being made thereon in accordance with the lines shown by said pegs. These improvements were on the south part of the addition, mostly in the vicinity of Hill Street and Main Street (now Broadway), and the improvements were made on lines east of the lines shown on said plat of said addition, but how far east cannot now be determined, the original pegs and also fences built while the pegs were standing having all disappeared, and there being a discrepancy of five feet between the lines called for by the field notes and the lines shown by the plat of East Joplin City, there is now no way to determine whether the pegs planted in the First Addition were located with reference to the east line of Fifth Street, as shown by the field notes or as shown by the plat of East Joplin City.

"Between the years 1872 and 1892, the houses now belonging to the plaintiffs and a few others were erected, consisting of residences and outbuildings and fences on the lines as originally shown by said stakes, and these improvements were mostly along Main Street (now Broadway) and Hill Street, some as far north as Valley Street. About the year 1892, the exact date not shown, the owners who platted and laid out these two

tracts, being also the owners of the forty-acre tract lying immediately south of the First Addition to East Joplin City, sold said forty-acre tract, together with all the unsold lots in the First Addition to East Joplin City, to a company of persons who laid out said forty-acre tract and platted same as 'Taylor's Addition to East Joplin City,' and had the same surveyed, which survey showed the discrepancy between the lines of the old improvements in First Addition to East Joplin City and the lines according to the plat thereof, whereupon they made a survey of First Addition to East Joplin City and located the lines of the streets and alleys and lots in accordance with the plat thereof and planted stakes showing said lines, and proceeded to sell the unsold lots, and the purchasers of such lots began to build houses and fences in accordance with said last mentioned stakes and in accordance with the lines as shown by the plat of said First Addition, the old original stakes all being gone."

The court then proceeds at some length in finding how the streets and property situate in First Addition to Joplin City had been improved since the resurvey of the same was made by said purchasers of the unsold lots just mentioned, which was some twelve or fifteen yards after the original survey was made, which was in 1872. But all of these findings are foreign to the question here involved.

I. The only question presented by this record for determination is, which shall prevail, the plat of First Addition to Joplin City, as actually laid out, located and staked out upon the surface of the ground by the original owners of the land and the makers of the plat, or the plat that erroneously attempted to follow the calls for monuments, courses and distances?

While there is but one plat in controversy, yet when viewed from the two aspects mentioned, the streets and alleys, lots and blocks indicated by the former occupy ground quite different from that called for by the latter. The pleadings recognize this difference, and the

petition asks that the plat as actually laid out, located and staked off upon the surface of the ground be adjudged the true plat of the addition, while the answer asks that the court correct errors of the plat mentioned in the answer in conformity to the calls for the monuments, courses and distances as disclosed by the plat and field notes filed therewith.

We have just recently had this precise question before this court in the case of Laddonia v. Day, 265 Mo. 383, where we had under consideration Section 6573, Revised Statutes 1879, which also governs this plat, and is now Section 10294, Revised Statutes 1909. That section reads:

"If any person shall sell or offer for sale any lot within any city, town or village, or any addition thereto, before the plat thereof be made out, acknowledged and recorded, as aforesaid, such person shall forfeit a sum not exceeding three hundred dollars for every lot which he shall sell or offer to sell. Such maps or plats of such cities, towns, villages and additions made, acknowledged, certified and recorder, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town or village, when incorporated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose. If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, and none other."

In discussing that statute, this court, on page 397, said:

"The question involved in this case is too important and far-reaching, either for good or evil, to rest unsettled, and for one I am now in favor of eliminating from the jurisprudence of this State, forever, all of the evil that still lingers in the law regarding this matter, which said Section 10294 was evidently designed to eradicate. In the administration of the law the courts have, at times, through inadvertence or over-

sight, overlooked said statute, and at other times have tried to harmonize it with the old rules of the common law regarding monuments, courses and distance governing the conveyance of rural property, when the two are as irreconcilable as are oil and water or good and evil, as is conclusively shown by the conflict mentioned in the cases before mentioned.

"The old rules of courses, distances and monuments when concededly applicable to the conveyance of rural property—after conveyance made and the vendee has been placed in possession of the property by the vendor, and large and lasting improvements have been made and placed thereon—the courts of this and many, if not of all, other states, have not hesitated for one moment to suspend through the application of the doctrine of estoppel, in order to carry out the real intent and purpose of the parties and to mete out equity and justice between them and their privies in contract, blood and estate.

"In many such cases that doctrine of estoppel has been applied to the conveyances of farms, to grants of rights of way for railroads, and even to the sale of city property.

"Those cases are so numerous and familiar to the bench and bar that it would be a supererrogation of labor and a waste of space to cite them.

"The courts in those cases work out through the principles of equity precisely what the Legislature evidently designed to accomplish by the enactment of the statute in question. Or in other words, the frequent errors and the many mistakes made by surveyors and property owners in laying out towns and cities and additions thereto, fraught with the hundreds of incidental and irreparable evils thereof, were the causes that gave birth to that statute; and the evident design was that when such a plat had been executed and filed in conformity to the statute *covering the land owned by the party making the addition and dedicating the streets and alleys indicated by the plat filed therewith,* then the

275 Mo.—15

streets and alleys indicated by the plat as actually fitted to and laid out on the land, became vested absolutely in the town or city for the use of the public, and that is true whether the plat as actually located upon the ground by the owner, by the sale of lots or otherwise, conforms to the lines of the survey or not, and especially after lots have been sold by him according to the actual location of the plat.

"Neither the public, the owners of the streets, nor the purchasers of the lots are so much interested in the question as to whether or not the plat conforms to the points of the compass or to the lines of the survey of sections and quarter sections, as they are in the certainty of the location of the lots and blocks and streets and alleys.

"Monuments are easily removed or destroyed, and for that reason they frequently disappear; but additions to towns and cities, laid out into lots and blocks and streets and alleys, with buildings erected upon the former and the streets improved, which is the very purpose of the addition, are not easily removed or destroyed. In the latter case, if a mistake is made of the true line of the street or of a lot or block, as a rule it only affects the party or parties making it; but in the former, the city and every property owner in the addition is of necessity affected thereby; and if that rule and not the statute is observed, each and all of them will be more or less damaged thereby.

"Any other construction of the statute would practically nullify and destroy the highly remedial provisions thereof, and in case of a mistake as previously indicated, that entire part of the city, and all of the property owners therein, would be thrown into confusion and uselessly damaged more or less; and in many cases the damages would be irreparable.

"We, are, therefore, of the opinion that the judgment should be reversed and the cause remanded to the circuit court for a new trial in conformity to the views herein expressed."

In brief, we tried to state that the platting of ground under this statute had the same legal effect to dedicate the streets and alleys therein described to the public as effectually as if they had been conveyed by deed directly to the city; and that when the owners of the lots and blocks fronting upon said streets and alleys as shown by the plat sell any or all of them to third parties, the title of the streets and alleys so dedicated cannot be questioned by the city, nor by other purchasers of other of such lots, nor can the rights of the purchasers of such lots to access to such streets and alleys as actually located be questioned by other purchasers of other lots embraced within the plat from the dedicators.

The views announced in the Laddonia case, supra, were confirmed by this court in the case of Macom v. Brewster, 273 Mo. 616, in an opinion written by BOND, J., on March 4, 1918.

For the reasons stated the judgment is reversed and the cause remanded to the circuit court with directions to render a decree for the plaintiffs as prayed for in the petition.

*Blair, P. J.,* and *Graves, J.,* concur.